# HAFETZ & NECHELES

ATTORNEYS AT LAW

500 FIFTH AVENUE
NEW YORK, N.Y. 10110

TELEPHONE: (212) 997-7595
TELECOPIER: (212) 997-7646
E-MAIL: info@hafetzlaw.com

FREDERICK P. HAFETZ
SUSAN R. NECHELES

ERIC D. DOWELL
JOSHUA R. GELLER
NOAH E. SHELANSKI
TRACY E. SIVITZ

February 7, 2010

<u>Via ECF</u>

Honorable Frederic Block
United States District Judge
Eastern District of New York
225 Cadman Plaza
Brooklyn, New York 11201

  Re: <u>United States v. Eliyahu Ezagui, No. 09-CR-185</u>

Dear Judge Block:

  We write to respectfully request that Your Honor preclude the Government from introducing Government Exhibit ("GX") 103f in evidence.

  Your Honor will recall that the indictment charges Mr. Ezagui with being responsible for making two types of alleged misrepresentations contained in the mortgage applications at issue. Specifically, it charges that Mr. Ezagui and the other straw borrowers:

  a. Falsely claimed on their mortgage applications that the properties would serve as their primary residences; and
  b. Failed to disclose the existence of the Residents' claims to the properties.

  The Government's bill of particulars (Docket Entry No. 88) specifies the other types of misrepresentations allegedly made by Mr. Ezagui and the other straw borrowers (defining the "among other things" clause contained in the indictment). Specifically, the bill of particulars states that Mr. Ezagui and the other straw borrowers falsely claimed that:

  c. They lawfully owned the property receiving the mortgage;
  d. They had the right to mortgage the property to the lender;
  e. There existed no outstanding claims against the mortgaged property, except those in the public record;
  f. They would promptly pay or satisfy superior liens on the mortgaged property;
  g. They intended to repay the loans on the mortgaged property;

HAFETZ & NECHELES

Honorable Frederic Block
2/7/10
Page 2 of 2

  h. One of the purposes of the loan on the mortgaged property was for improvements to the mortgaged property;
  i. They purchased the mortgaged property as an investment;
  j. They purchased the mortgaged property for use as their secondary residence; and
  k. They had made a down payment on the mortgaged property.

  GX 103f sets forth the "cash from borrower" amount shown for many of the mortgage closings at issue. The apparent purpose of this exhibit is to conflate the "cash from borrower" amount with the "down payment," and somehow link it to the suggestion that Mr. Ezagui and others represented that these funds changed hands when in fact they did not.

  But "cash from borrower" is not the same as a "down payment." This was confirmed by Mr. Hellstrom—one of the Government's bank witnesses—who testified as follows:

  Q: That was a material fact to you whether that check, the down payment, was given, right? That's the earnest money?
  A: That's correct.
  Q: That is not the same as the cash from borrower?
  A: No.

(Tr. at 446). Rather, "cash from borrower" represents a remainder in the equation set forth in a loan application and on a HUD-1. This is different from the "deposit or earnest money," where—as already seen in this case—lenders often would require an affirmation and a copy of the check representing these funds. Conversely, there are no instances in the loan files at issue where a borrower affirms paying the "cash from borrower" amount, or where a check representing that amount is contained in the loan file.

  Accordingly, GX 103f is irrelevant to the charges against Mr. Ezagui contained in the indictment and clarified in the bill of particulars, and will serve only to confuse the jury. We respectfully request that the Court preclude the Government from introducing GX 103f in evidence.

Respectfully submitted,

_Susan R. Necheles_ (signature)
Susan R. Necheles